IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 17-260 |
| DERON HOWELL | ) | |
| KAHLIL SHELTON | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

AND NOW, comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Timothy Lanni and Jeffrey Bengel, Assistant United States Attorneys for said district, submits its following sentencing memorandum in the above captioned matter:

INTRODUCTION

After trial in front of the Honorable Billy Roy Wilson, District of Arkansas, sitting by designation in the Western District of Pennsylvania, defendants Deron Howell and Kahlil Shelton were convicted of orchestrating and executing a vicious armed robbery in Cranberry, Pennsylvania in which one of the victims was shot through the chest and nearly killed. Deron Howell was also convicted of setting up an ambush robbery of four professional video game players in the City of Pittsburgh that took place several days before the Cranberry robbery. Given the calculating and inherently violent nature of the crimes for which these defendants stand convicted and the need to deter organized crimes of violence, the Government asks that you sentence each defendant to the applicable mandatory minimum terms of imprisonment as well as the maximum sentence under the applicable advisory guideline range.

## GOVERNMENT'S OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT

## A SIX POINT ENHANCEMENT SHOULD APPLY TO EACH DEFENDANT FOR SHOOTING A ROBBERY VICTIM THROUGH THE CHEST WITH A FIREARM AND CAUSING PERMANENT OR LIFE-THREATENING BODILY INJURY

The pre-sentence investigation report applied a 5 level enhancement for injury between sub-divisions (B) serious bodily injury and (C) permanent or life-threatening bodily injury. However, the Government submits that the victim suffered a permanent or life-threatening injury when he was shot through the chest and airlifted to two emergency surgeries. Permanent or life-threatening bodily injury is defined in section 1B1.1 of the Guidelines as "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." A stab wound may be seen as involving a substantial risk of death when it is traumatic enough to require emergency surgery. See United States v. Jacobs, 167 F.3d 792, 797–98 (3d Cir.1999) (finding that stab wound necessitating emergency surgery to remove intestinal obstruction was life-threatening). By contrast, injuries that are "serious" but not typically "life-threatening" include fractured bones, United States v. Reese, 2 F.3d 870, 897 (9th Cir.1993), unconsciousness as a result of a blow, United States v. Thompson, 60 F.3d 514, 518 (8th Cir.1995), and injuries that may be treated with outpatient procedures, United States v. Woodlee, 136 F.3d 1399, 1408–09 (10th Cir.1998).

At trial, the robbery victim testified that he was shot through the lower arm and the bullet travelled through his chest. The victim testified that he was bleeding profusely while he ran out of

the house seeking help. At trial, the Government admitted multiple exhibits to show the victim's extreme blood loss. These exhibits included pictures of the door where the entry wound occurred covered in blood and numerous pictures of a blood trail from the porch of the house to the neighbor's yard back to the front yard of the crime scene. Additionally, the Government admitted two shirts as physical exhibits which were used by the other victims to stop the blood loss. The shirts were completely saturated with blood.

The victim testified that he was air-lifted to a regional hospital where he had two emergency surgeries to remove the bullet and to close the wound. The victim testified that he has permanent nerve damage as a result of the shooting and now has intestinal health issues as a result of his surgery. The Third Circuit has held that a six point enhancement was proper for the victim of a shooting who suffered extensive internal injuries and nerve damage. United States v. Philiposian, 267 F.3d 214 (3d Cir. 2001). In Philiposian, the court held not only that the six level enhancement was proper, but also that a two-level upward departure was warranted when the victim suffered a gunshot wound and the same injuries sustained by the victim in the instant case. Philiposian, 267 F.3d 220.

Here, the victim was shot at point blank range through the chest and had to have emergency surgery to survive. The victim still lives with the scars of this wound, nerve damage, and intestinal health problems. These same type of injuries have even sustained a two level upward departure. The Court should find that shooting someone in the chest at point blank range is an injury which threatens someone's life.

## A TWO LEVEL ENHANCEMENT SHOULD APPLY FOR SHELTON IN THE CRANBERRY ROBBERY AND FOR HOWELL IN BOTH ROBBERIES FOR HOLDING THE VICTIMS AT GUNPOINT

The Government timely objected to the pre-sentence investigation report and stated that it believed that the enhancement under section 2B3.1(b)(4)(B) should apply as both sets of victims were restrained by being held at gunpoint. The Probation Officer disagreed as he felt there was no evidence that the victims were tied, bound, or locked up. The Government agrees that these limited scenarios would absolutely support the two level enhancement. However, the Government believes that both defendants should not escape this enhancement merely because they did not physically touch the victims. Cases have generally held that "[p]hysical restraint" is not limited to the examples listed in the guidelines. As one court explained, "[t]he use of the modifier 'such as' in the definition indicates that the illustration of the 'physical restraint' are listed by way of example rather than limitation." United States v. Jones, 32 F.3d 1512, 1518 (11th Cir.1994) (internal quotation marks omitted); see also United States v. Rosario, 7 F.3d 319, 320-21 (2nd Cir.1993); United States v. Doubet, 969 F.2d 341, 346 (7th Cir.1992); United States v. Stokley, 881 F.2d 114, 116 (4th Cir.1989). Rather, the harm this guideline is meant to prevent is wholly addressed by those who restrain victims using firearms instead of their hands.

The two level enhancement was properly applied to a bank robbery defendant under 2B3.1(b)(4)(B) when that defendant placed a firearm in the face of a bank robbery victim and took money from behind the counter. United States v. Copenhaver, 185 F.3d 178 (3d Cir. 1999). Further, there does not need to be any evidence that the defendant used the firearm to 'move' or 'order' the defendant around. Copenhaver, 185 F.3d 180.

During the Cranberry robbery, Kahlil Shelton and an unknown accomplice held multiple individuals at gunpoint while Deron Howell stole marijuana from them. Two unknown

accomplices held four victims at gunpoint while Deron Howell stripped and robbed them on a street in Pittsburgh. For this conduct, Kahlil Shelton was convicted of Using, Carrying, and Brandishing a Firearm During a Crime of Violence and a Drug Trafficking Crime. Deron Howell was convicted of two counts of Using and Carrying a Firearm During a Crime of Violence and/or Drug Trafficking Crime. Howell during the Pittsburgh robbery did physically restrain each victim by stripping them down and going through their pockets. However, these actions seem inconsequential when examining the real nature of the conduct and the purpose of the enhancement. Both Kahlil Shelton and Deron Howell put firearms in the face of their victims and used threat of death to accomplish their robberies. A two level enhancement should apply to Kahlil Shelton and Deron Howell at Count Three and Four and a two level enhancement should apply to Deron Howell at Counts Eight and Nine for holding multiple victims at gunpoint.

### A TWO LEVEL LEADERSHIP ENHANCEMENT SHOULD APPLY TO DERON HOWELL AT COUNTS THREE AND FOUR

Howell's *modus operandi* in both cases was to identify vulnerable targets that trusted him and then to set them up for robberies and death if they resisted. The pre-sentence investigation report correctly applied a two level enhancement in Counts Eight and Nine for Howell's conduct in setting up the ambush robbery in which he was the leader and organizer along with two unknown co-conspirators and accomplices. However, Howell's *modus operandi* was almost the same in Counts Three and Four when he utilized Rob Gebremeskel, Kahlil Shelton, and an unknown accomplice and co-conspirator to first purchase marijuana from the victims and then to set up a second false purchase and the robbery itself. Therefore, a two level enhancement for aggravating role under section 3B1.1 should also apply to Counts Three and Four for Howell.

Howell was the first individual to organize and put the Cranberry robbery in motion.

Howell began by using Robert Gebremeskel to find a target to purchase marijuana from. Howell then used Gebremeskel and Shelton to travel to the 9108 Marshal Road address to buy marijuana from the victims. After this occurred, Howell continued to be the organizer and leader of the robbery ring by setting up with one of the victims a second marijuana deal. Howell then utilized Shelton and an unknown accomplice to travel to the location and actually commit the robbery. Howell transported all of the co-conspirators to the location in his car on two separate occasions. Howell was the one that used his phone number to contact the victims.

As this criminal conduct did not employ five or more participants, subsections (a) and (b) do not apply. However, Howell was the organizer of this nefarious plan and the one that lead all the other co-conspirators to carrying it out. A two level enhancement is proper for this type of sophisticated criminal planning all beginning and ending with Deron Howell.

## **DERON HOWELL'S OFFENSE LEVEL AND ADVISORY GUIDELINE RANGE**

As stated above, the Government believes Howell should face a six level enhancement for the life threatening injury, a two level enhancement for physically restraining victims and a two level aggravating role leadership enhancement in Count Group 1 for the Hobbs Act Robbery in Cranberry. These enhancements would bring Howell's adjusted offense level to 31 for the first group.

In the second group, the Government believes Howell should face a two level enhancement for physically restraining victims. This would bring Count Group 2 adjusted offense level to 24. After these two Count Groups are "grouped" per the guidelines, the Government submits that the Combined Adjusted Offense Level for Howell should be 32.

With an Overall Offense Level of 32 and a Criminal History Category of II, the

Government submits that Howell's advisory guideline range should be 121 – 151 months.

However, Howell was also convicted of two separate counts of Using and Carrying a Firearm, 18 U.S.C. 924(c)(1)(A)(i). Howell faces a mandatory minimum 5 years on the first count of conviction. On the second count of this conviction, Howell faces a mandatory minimum 25 years. United States v. Walker, 473 F.3d 71, 74 (3d Cir. 2007) (defendant properly sentenced to multiple 25 year consecutive terms for armed robbery spree); United States v. Couch, 291 F.3d 251, 253 (3d Cir. 2002) (25 year term proper for counts of conviction within same plea); United States v. Casiano, 113 F.3d 420, 422–23 (3d Cir. 1997) (25 year term appropriate for two counts of conviction arising from same transaction or episode). In the instant case, Howell was convicted of two separate Counts which occurred on two separate dates. As a result he must be sentenced to a term of at least 30 years consecutive to the underlying offenses.

Accordingly, the Government submits that given the mandatory minimum counts of conviction and the Government's calculated offense levels, Howell's advisory guideline range is **481 – 511 months of imprisonment.**

## KAHLIL SHELTON'S OFFENSE LEVEL AND ADVISORY GUIDELINE RANGE

As stated above, the Government believes Shelton should face a six level enhancement for the life threatening injury and a two level enhancement for physically restraining victims and These enhancements would bring Shelton's adjusted offense level to 29.

With an Overall Offense Level of 29 and a Criminal History Category of IV, the Government submits that Shelton's advisory guideline range should be 121 – 151 months. However, Shelton was also convicted of Using, Carrying, and Brandishing a Firearm During a Crime of Violence and Drug Trafficking Crime. As per 18 U.S.C. 924(c)(1)(A)(ii), Shelton faces

a mandatory minimum term of 7 years.

Accordingly, the Government submits that given the mandatory minimum counts of conviction and the Government's calculated offense levels, Shelton's advisory guideline range is **205 - 235 months of imprisonment.**

## DEFENDANT HOWELL SHOULD BE SENTENCED TO 511 MONTHS OF IMPRISONMENT

Deron Howell unrepentantly orchestrated two violent robberies only a short time away from each other. Howell was brazen enough to use his name, phone number, and car in each of the robberies. Further, Howell was callous enough to rob four individuals in the Pittsburgh robbery that he had developed a friendship with. One of these individuals was a long-time friend of Howell. Howell only saw one thing during this crime spree: money. He did not consider the deadly impact it could have on multiple victims or even the legal consequences it could have for himself. Greed is the only thing that fueled Deron Howell.

Title 18, United States Code, Section 3553(a) requires this Court to consider the following sentencing factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

All of the factors outlined above support an overwhelming sentence for Deron Howell of 511 months. This is a sentence meant to incapacitate Howell. If not for this investigation and arrest, Howell would have continued to set up and rob easy targets. Eventually, it would have been a someone would have died. Further, this is a case that could have been prosecuted in state or federal court. It is important to deter Howell and others from this type of vicious criminal conduct with a lengthy federal sentence. These crimes have had a tremendous physical and psychological impact on the victims. One nearly died. Additionally, a six year old child was held at gunpoint and within inches of getting shot himself. Further, these type of violent crimes have an severe impact on the community at large. Citizens do not feel safe when individuals are coordinating violent home invasions and robbing people on the street with AK-47s. For these reasons, the Government asks that you sentence Howell to 511 months imprisonment.

## **DEFENDANT SHELTON SHOULD BE SENTENCED TO 235 MONTHS OF IMPRISONMENT**

While Howell was the brains of the operation, Shelton was the muscle. He was the one who fired a shot into the ground and held each of the individuals at gunpoint. Shelton's lifetime of violence and firearms offenses prepared him well for this role. Shelton had only been released from state prison in June before committing this offense. Shelton had been released from prison for two separate state felony firearms possession cases. Shelton was arrested on one case for illegally possessing a firearm and then re-arrested while on bail for illegally possessing a firearm again. Shelton was first adjudicated delinquent at age 14 for possessing a defaced handgun. He was adjudicated delinquent at age 15 for the same offense. At age 16, Shelton was adjudicated delinquent for selling crack cocaine to an undercover officer. At age 17, Shelton was adjudicated delinquent for selling heroin. Shelton has never been gainfully employed, has no skills or

education. He is committed to a life of crime. His crimes have become more violent and dangerous as he has grown older culminating in the instant case. Shelton has had an interrupted crime spree for his entire life. Only incarceration has slowed down Kahlil Shelton. Therefore, the Government respectfully requests that you sentence him to **235 months** of incarceration.

## CONCLUSION

The Government respectfully requests that the Court sentence each defendant to these significant prison sentences to reflect the terror and harm each defendant caused to the eight victims in this case and to adequately deter others from committing organized crimes of violence for greed.

Respectfully Submitted,

SCOTT W. BRADY
United States Attorney

*s/ Timothy M. Lanni*
TIMOTHY M. LANNI
Assistant U.S. Attorney
NJ ID No. 011242012

*s/ Jeffrey R. Bengel*___
JEFFREY R. BENGEL
Assistant U.S. Attorney
DC ID No. 1018621

Case 2:17-cr-00260-AJS   Document 174   Filed 09/26/18   Page 11 of 11