IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA,
                    Plaintiff,

                                        Criminal Action
          vs                            No. 17-260-2

DERON HOWELL,
                    Defendant.

_____


          Transcript of Sentencing proceedings held on
October 1, 2018, United States District Court, Pittsburgh,
Pennsylvania, before the Honorable Bill R. Wilson, U.S.
District Court Senior Judge.


APPEARANCES:

For the Government:          Timothy Michael Lanni, Esq.
                             United States Attorney's Office
                             700 Grant Street, 4th Floor
                             Pittsburgh, PA 15219
                             timothy.lanni@usdoj.gov



For the Defendant:           Steven C. Townsend, Esq.
                             564 Forbes Avenue
                             Manor Building Penthouse
                             Pittsburgh, PA 15219
                             stownsend@pghlaw.com



Court Reporter:              Shirley Ann Hall, RDR, CRR
                             6260 U.S. Courthouse
                             Pittsburgh, PA 15219
                             shirleyhall_uscra@yahoo.com

Proceedings recorded by digital stenography; transcript
produced by computer-aided transcription.

```
1                    P R O C E E D I N G S
2        (In open court.)
3             THE COURT:  Be seated, please.
4             We're here today for sentencing in US v Deron Howell,
5    Case No. 2:17-cr-00260-2.  Mr. Howell is here with his lawyer,
6    Mr. Townsend.  The prosecution is represented by Mr. Hackney.
7             The parties ready?
8             MR. TOWNSEND:  Yes, Your Honor.
9             MR. LANNI:  Yes, Your Honor.
10            THE COURT:  I hear some voices, but I don't see
11   anybody.
12            MR. LANNI:  Your Honor, Assistant United States
13   Attorney Timothy Lanni, on behalf of the government, joined at
14   counsel table by ATF Special Agent Albert Maloney and Assistant
15   US Attorney, Jeffrey Bangel.  Good morning, Your Honor.
16            MR. BANGEL:  Good morning, Your Honor.
17            THE COURT:  Thank you.  Be seated, please.
18            MR. TOWNSEND:  May it please the Court, Steve Townsend
19   on behalf of Mr. Howell.
20            THE COURT:  All right.  I will review how the case got
21   here.  Follow me.  If I misstate it, let me know.
22            On February the 20th, 2018, a superseding indictment
23   charged Mr. Howell and Mr. Shelton with conspiracy with possess
24   with intent to distribute and distribute less than 50 kilograms
25   of marijuana, possession with intent to distribute less than
```

1    50 kilograms of marijuana, conspiracy to commit Hobbs Act

2    robbery on August 7, 2017, and July 27, 2017, committing the

3    two Hobbs Act robberies, and using, carrying, brandishing

4    and/or discharging a firearm during and in relation to two

5    robberies.

6            On May the 21st of 2018 a jury found Mr. Howell guilty

7    of all the counts in the superseding indictment that named him.

8            Mr. Howell, are you satisfied with your lawyer?

9            THE DEFENDANT:  Yes.

10           THE COURT:  All right.  If you had a problem with him,

11   now would be the time to tell me.

12           In turning to the sentence, I will consider each of

13   the factors listed in 18 United States Code, Section 3553, the

14   sentencing guidelines, and other statutes that are applicable

15   and other matters before the Court.

16           The Sentencing Reform Act of 1984 committed sentencing

17   guidelines.  Those guidelines are just that, they're

18   recommendations, and I'm only obligated to consider them.  I'm

19   not bound to follow them.  They're not mandatory in any way.

20           There's been a presentence report.  We'll go over it,

21   the presentence report, and I'll resolve the disputations.  And

22   then we'll see what guideline we come up with, and then

23   Mr. Townsend will get to speak on behalf of Mr. Howell and

24   Mr. Howell can speak on his own behalf if he wants to.  He

25   doesn't have to if he doesn't want to, I won't hold it against

1    him.  It's a hundred percent up to him.  Then the prosecution

2    will get -- one of the prosecutors will get to close for the

3    Government.

4          All right.  I want to go over the report.  Have both

5    sides had all the time they need to review the presentence

6    report?

7          MR. IANNI:  Yes, Your Honor.  On behalf of the

8    United States, the Government has had the ability to review the

9    presentence report comprehensively, file any objections, and

10   confer with counsel and the Probation Office before filing

11   those objections.

12         THE COURT:  In other words, your answer is the

13   Defendant is monosyllabic.  Yes?

14         MR. IANNI:  Yes.

15         MR. TOWNSEND:  Yes, Your Honor.

16         THE COURT:  All right.

17         All right.  Both sides object to Section 26.  The

18   Government believes there should be a six-level enhancement for

19   permanent or life-threatening injury rather than just a

20   five-level enhancement.  The Defendant objects, says it should

21   only have a four-level enhancement.

22         Does either side wish to add anything on this point?

23         MR. IANNI:  No, Your Honor.

24         MR. TOWNSEND:  No, Your Honor.

25         THE COURT:  All right.  I heard the evidence at trial

1   and the Defendant -- I mean the victim still suffered from

2   residual numbness and other -- and some intestinal problems,

3   and so I find that the six-level enhancement is applicable.

4          All right.  The Government objects to the specific

5   offense characteristics, Section 2B3.1(b), for both Counts 4

6   and 9.  The Government contends that they were physically

7   restrained during a robbery and held at gunpoint.  This would

8   result in a two-level enhancement.  The defense contends that

9   the guideline definition of physically restrained means the

10  forceful restraint of the victim such as being tied, bound or

11  locked up.

12         All right -- where are those cases?  The cases are

13  broader than the guideline language itself.  I'll cite those

14  cases.  I want to hold -- I am holding that they were

15  restrained over the objection of the Defendant.  Holding them

16  at gunpoint counts as restraint in my opinion.

17         The cases I have reviewed are several.  But the main

18  one is United States against Copenhaver, C-O-P-E-N-H-A-V-E-R,

19  185 F.3d 178.  That's 185 F.3d 178, Third Circuit, 1999.  So I

20  am giving the two-level enhancement over the objections of the

21  Defendant.  Save the Defendant's exception.

22         Under Section 29, the Government believes that a

23  two-level enhancement for aggravating role under Section 3B1.1

24  should apply.  Did you decide on the same thing extra on this?

25         MR. IANNI:  No, Your Honor.

 1          MR. TOWNSEND:  No, Your Honor.

 2          THE COURT:  All right, all right.  I heard the

 3   evidence and it's my opinion that the evidence established that

 4   he was a leader or organizer of the robbery on August the 7th,

 5   2017.  Therefore, the -- it gets plus two.

 6          The Defendant objects to Paragraph 35.  That's the

 7   same thing, they object -- they dispute the fact that he was an

 8   organizer of the crime, say it was Mr. Tucker.  Overruled.

 9   Exception saved.

10          Are there any other objections?

11          MR. LANNI:  No, Your Honor.

12          MR. TOWNSEND:  No, Your Honor.

13          THE COURT:  All right.  With those rulings, I'll adopt

14   the presentence report.  If he decides to appeal my sentence,

15   it will be released to the lawyers for the parties without

16   further orders of Court.

17          All right, I'm going to work through the guideline

18   range here.  You all go along with me to catch me if I am wrong

19   on any of them.

20          Group Count 1, that's August 7, 2017, Hobbs Act

21   robbery, base offense level under the guidelines is 20.  It

22   gets plus six because the victim Marinello was shot during the

23   robbery and sustained a permanent or life-threatening injury.

24   That's under Guideline 2B3.13(b).  Plus two for the victims

25   were forcibly restrained.  Plus one because the marijuana was

1    taken during the August 7, 2017 robbery.  Plus two because he

2    was an organizer or leader.  Adjusted offense level is 31.

3              Group Count 2, July 27, 2017, Hobbs Act robbery, the

4    base offense level is 20, plus two for being an organizer,

5    involving more than five people; adjusted level is 22.

6              Count 5, using and carrying a firearm during and in

7    relation to and in furtherance of a drug trafficking crime or a

8    crime of violence in furtherance thereof, he gets 25 years

9    consecutive to all other counts.

10             Count 10, using, carrying, brandishing and/or

11   discharging a firearm during and in relation to drug

12   trafficking crimes or crimes of violence and possession and/or

13   discharge of a firearm in furtherance thereof, five years

14   consecutive to all other counts.

15             Greater of the adjusted offense level above is 31,

16   increased based on grouping plus two, combined total offense

17   level of 33.

18             I have a total criminal history score of two, which

19   puts him in criminal history category Roman numeral two.

20             The statutory maximum term of imprisonment at Counts 1

21   and 2, not more than five years; Count 3 and 4, not more than

22   20 years; Count 5, not less than 25 years, not more than life;

23   Counts 8 and 9, not more than 20 years and maximum term of

24   imprisonment is 20 years; Count 10, not less than five years,

25   not more than life.

1              Based on a total offense level of 33 and a criminal

2    history category of two, Roman numeral two, the guideline

3    imprisonment range is 151 to 188 months.  However, after adding

4    the two mandatory terms of 25 years and five years, that's 360

5    months combined.  The guideline range is 511 to 548 months.

6              Supervised release under 18 USC Section 3583, Counts 1

7    and 2, not less than two years; Counts 3, 4, 8 and 10, not more

8    than three years; Count 5 and 10, not more than five years.

9    Guidelines, Count 1 and 4, 8 and 9, not less than one year and

10   not more than three years; Counts 5 and 10, not less than two

11   years, not more than five years.

12             Probation is not applicable.

13             Financial report indicates that he couldn't pay a lump

14   sum or installment.

15             Is there any restitution involved?

16             MR. IANNI:  No, Your Honor.

17             THE COURT:  All right.  Any objections to my

18   interpretation of the sentencing options other than the ones

19   already noted?

20             MR. IANNI:  Not from the Government, Your Honor.

21             MR. TOWNSEND:  No, Your Honor.

22             THE COURT:  All right.  All right, you may speak on

23   behalf of the Defendant.  Mr. Townsend, if you will, come to

24   the lectern.

25             Let me ask this, does the Government object to

1    511 months?

2         MR. LANNI:  Your Honor, given the new calculation of

3    the guidelines, the Government would be asking for 548 months.

4         MR. TOWNSEND:  Thank you, Your Honor.

5         THE COURT:  I tell you what I'm going -- I'm inclined

6    to give him 511.  Why don't we let the prosecutor speak first

7    and I'll let you do a rebuttal.  Does that suit you?

8         MR. TOWNSEND:  Fine.

9         MR. LANNI:  Thank you, Your Honor.

10        May it please the Court, today we are here because

11   eight different individuals are affected by this conduct:

12   Deajuan Tucker, Anthony Nails, Marcus Carr, Ormandy Hern,

13   Julian Krivonack, Octavio Marinello, Brandon Cavey and a

14   six-year-old child named CD, initials only.

15        And how were these people's lives affected?  Well, at

16   the very least, each one of them were terrified when different

17   types of semi-automatic weapon, rifles, handguns were put into

18   their face.  They were basically robbed, stripped, beaten in

19   order to get a small sum of money from each one of them.  And

20   that's why we're here today.

21        And we're here today because Mr. Deron Howell

22   organized and orchestrated the terror and harm to each and

23   every one of these individuals.  And robbery is an inherently

24   dangerous and violent crime.  And really not only is this a

25   robbery offense, it's really an attempted murder offense

1    because Mr. Octavio Marinello, when he was put between the
2    choice of life and death with a handgun in his face, he decided
3    to fight back.  And in reward for deciding to fight back, he
4    got shot through the chest -- the arm, then the chest.
5              And Your Honor was well aware of what was presented at
6    trial, the different clothing that was sopped in blood, a blood
7    trail that went over three different yards, into the road in
8    Marshall Road, and then back to there.  He was airlifted, two
9    bullets were taken out of him, and he still lives with those
10   scars and the impact of what happened on that day.
11             And, additionally, it's not just the physical wounds
12   that each and every one of these -- that Mr. Marinello had, but
13   it's the psychological harm that each and every one of these
14   victims faced, including CD, a six-year-old child.
15             Now, after Deron Howell orchestrated the first robbery
16   in which he essentially befriended multiple people that he
17   knew, Deajuan Tucker, somebody that he's been friends with for
18   a long time, the other individual, Marcus Carr and
19   Ormandy Hern, two well-respected and, you know, really good
20   ranked video game players -- Mr. Carr was ranked number one in
21   the world at one point.
22             THE COURT:  Let me ask you this, how did they gamble
23   on video?
24             MR. IANNI:  How do they gamble on video games?
25             THE COURT:  Yeah, I mean --

1           MR. IANNI:  Just people put up money and they gamble.

2    And they'll also -- those individuals made a significant amount

3    of money from actual entry fees and from making the money from

4    those games themselves, from the entry fees in the tournaments

5    as well as endorsements, sponsorships, different things like

6    that.  So there is absolutely legitimate income that gets from

7    that.  However, whether it's from illegal gambling or marijuana

8    dealing, you know, that's the targets that Mr. Howell picked.

9           THE COURT:  Okay.

10          MR. IANNI:  So these were individuals that he knew.

11   And that occurred, you know, approximately two weeks before the

12   second robbery.

13          So this robbery occurs, Mr. Howell gets away with it

14   or so he thinks, even though he robbed people he knew, what

15   does he do?  He goes and finds the next target, who is a

16   completely different segment of society essentially, up in

17   Cranberry Township.

18          And what kind of transpired on that day is after they

19   had set up the whole robbery, Mr. Howell and Mr. Shelton and a

20   third unknown individual go up there, they see what's going on.

21   They see a six-year-old child sitting right there.  They see

22   Julian Krivonack, who really has nothing to do with this, and

23   then they see KV and Marinello who they're there to rob the

24   marijuana from.  But they don't give any thought to -- that

25   there's a six-year-old child there, that there's another

1    unknown, another unwitting person that's there,

2    Julian Krivonack, who is a veteran of the Armed Services,

3    overall pretty good guy.  He didn't deserve this.

4            And neither did the victims who were shot because even

5    though they were selling marijuana, what's the offense level

6    for selling less than 50 kilograms of marijuana in this

7    district?  It would be a probation guideline sentence, for

8    instance.  It doesn't give somebody the right to hold them at

9    gunpoint and put the life choice, between life or death, for

10   those individuals.  And that's really what it was.

11           Because as the bullets started flying, Carson -- CD,

12   the six-year-old child, had to be picked up and brought through

13   the room where Mr. Shelton had just fired a shot in the ground

14   and where the third unknown police was running to shoot

15   Mr. Marinello.  But, again, all of this harm, all of this

16   conduct for what?  A few thousand dollars?  Six thousand

17   dollars the first time.  The second time, six pounds of

18   marijuana.

19           Even if you extrapolate that cost to something of --

20   you could sell it for 12,000 or 10,000, think of all the harm

21   and all of what was put at jeopardy.  There's -- it's a Godsend

22   that nobody died in this case and really just due to the great

23   medical services at UPMC that were able to be airlifted --

24   Marinello was able to be lifted there.

25           So when we think about that conduct and we think about

1   how it transpired and who organized it, Your Honor, I think

2   there needs to be a -- the maximum sentence put forth for this

3   type of conduct because these are types of cases that if things

4   went differently, you know, this was first a City of Pittsburgh

5   case, then the ATF came aboard, then the city -- Cranberry

6   Township.  If it wasn't for Special Agent Albert Malone, if it

7   wasn't for Special Agent Maurice Ferentino, Detective

8   Matt Irvin, Detective Wingard from the City of Pittsburgh, this

9   case would have never came together.

10        And every day people commit these types of robberies,

11  these strongarm types of robberies with weapons; and I think

12  Your Honor needs to send a message that these are inherently

13  dangerous violent crimes, and this is what occurs when people

14  set up these types of robberies for essentially no financial

15  gain.  At the end of the day, what is $6,000, $10,000 going to

16  do when you put this type of life in jeopardy, Your Honor?

17        So I think that the maximum guideline sentence of

18  548 months is warranted in this case because had it not been

19  for Mr. Marinello being saved by UPMC, really, the guideline

20  would have been life in this case.  So given the conduct, given

21  the complete unrepentant nature of setting up one dangerous

22  robbery and then setting up another, and given all the factors

23  in 3553, Your Honor, the Government asks that you sentence

24  Deron Howell to the mandatory minimum terms as outlined in the

25  counts of conviction as well as the 548 months for the advisory

1    guideline range.

2              THE COURT:  How many years is 548 months?

3              MR. IANNI:  If I could just have a second, Your Honor.

4              THE COURT:  All right.

5              LAW CLERK:  45 and two-thirds.

6              MR. IANNI:  The law clerk is smarter than me,

7    Your Honor; I'll go with that.

8              LAW CLERK:  45 and two --

9              THE COURT:  I think it's 45.6; and how much is 511?  I

10   believe that's 42.6.

11             MR. IANNI:  I believe that's correct, Your Honor.

12             THE COURT:  All right.

13             I'll hear from the defense.  Your client is 26?

14             MR. TOWNSEND:  Yes, Your Honor.

15             Your Honor, in effect what the Government is asking

16   the Court to impose and based upon the Court's statements, your

17   inclination as to the sentencing, whether it's 511 or 548, it's

18   in effect almost a life sentence regardless based upon the

19   mandatories in this case.

20             The Government went over the nature and circumstances

21   of the offense, which is part -- one of the factors that we

22   have to review when we're looking at 3553 factors in

23   sentencing; but I would like to just address the other factors

24   that the Court must consider.  I don't have the document

25   number, but their arguments are contained in my sentencing

1    memorandum that I filed with the Court.

2          I'd just like to briefly overview the history and

3    characteristics of the Defendant.  I know this Court's already

4    reviewed that section; but it cannot be overstated, the effect

5    that a childhood -- a child has -- or the effect that the

6    demographics and economic, socioeconomics plays on a child.

7    And this is the perfect example, not excusing his choices later

8    in life, not excusing his choices as a young man; but they

9    certainly do have a detrimental effect whereas someone who has

10   the benefits of having a nuclear family and money and

11   supportive role models in their life they don't have.

12         The nature and the circumstances of the offense:  Of

13   course as Mr. Lanni explained, this was a -- two robberies, one

14   involving injury.  We can't, you know, give that lipstick.  We

15   can't make that any less detrimental than it was on that day.

16   Yes, we're talking about drug dealers and illegal gamblers and

17   I am not saying that they deserve what they got because they

18   don't.  But we certainly have to take a look when we're looking

19   at totality of the circumstances as to what happened here.

20         This wasn't a -- you know, these parties were not all

21   innocent.  And if the jury found that my client robbed these

22   individuals, absolutely that's wrong.  But it's a little

23   different story when you have somebody who is a drug dealer,

24   known drug dealer, who is actually carrying a firearm selling

25   6 pounds of marijuana himself.  And I think the Court should

1   take that into consideration.

2            Section C, the lack of seriousness of the criminal

3   history:  Mr. Howell as a young man has two minor ungraded

4   misdemeanor offenses for driving under the influence of

5   alcohol.  Other than that, that's it.  That places him in that

6   level two category, which I can't do anything about the

7   criminal history; it is what it is.  But I think that being in

8   that criminal history category two sort of overstates his

9   criminal history based upon the ungraded misdemeanors that he's

10   convicted of.

11            Your Honor, by -- what I'm imploring is that the Court

12   reconsider its inclination of the 511 and really address the --

13   the other factors in this case as well as take into

14   consideration United States versus Dean, where we have a

15   similar situation, two robberies, two firearms used.  And the

16   Court looks at that sentence of 360 months in mandatories and

17   crafts a sentence that is sufficient but not greater than

18   necessary.

19            I don't believe that 511 months is necessary.  I think

20   it's much greater than necessary.  I think if Mr. Howell is

21   sentenced to 360 months and he is released at the age of 55,

22   the likelihood of recidivism is going to be extremely low.  It

23   will address -- the 30-year sentence does address the

24   seriousness of the offense, it also prevents and protects the

25   public for the next 30 years, plus an individual coming out of

1   a federal correctional institution at, you know, 54, 55 years

2   old.  So I think that the mandatory minimum sentence of

3   30 years is sufficient but not greater than necessary to effect

4   the sentence in this case as far as the 3553 factors are

5   concerned.

6            THE COURT:  All right.  Let me ask both of you if he

7   got 30 years, for example, when would he got out?  I mean --

8   assuming he gets, does right and doesn't get any demerits and

9   all that sort of thing, roughly?

10           By the way, does your client want to speak?

11           THE DEFENDANT:  Yes.

12           MR. TOWNSEND:  Yes, Your Honor.  I calculated roughly,

13  if he would get 100 percent good time, it would be 26, a little

14  over 26 years.

15           THE COURT:  The Government agree with that?

16           MR. LANNI:  I would agree with that calculation,

17  Your Honor.

18           MR. TOWNSEND:  And that's based on the full good time.

19  My understanding is they don't get the full good time, but that

20  would be the maximum.

21           THE COURT:  Okay.  All right.

22           You may speak.  You can be seated if you want to and

23  speak right into the mic.  You can sit down if you'd prefer or

24  you can stand up.  It's up to you.

25           THE DEFENDANT:  How you doing, Your Honor?

1          THE COURT:  I'm tolerable.

2          THE DEFENDANT:  I'm Deron Howell.  I'm 26 years old.

3  I have a wonderful family out there, a five-year-old daughter.

4  I sit in front of you today an innocent man.  I -- I look at

5  all this time and I'm terrified.  I have never been locked up

6  in my whole entire life, and this is my first experience.  I'm

7  at the Allegheny County Jail right now.  It's been 22-and-two.

8  I've been confined in a cell for 22 hours and only two hours of

9  rec for a month and a half now.

10         This experience so far is -- already has a hold on me,

11  a grab on me that is so, so tight, it's shaking.  I'm shaking

12  as a man right now, Your Honor.

13         I just want to tell my family that I'm sorry.  I love

14  you with all my heart.  But I'm strong, I'm going to get

15  through this situation.

16         Also, I ask, Your Honor, I feel like my attorney did a

17  good job on some things.  I think he could have worked a little

18  bit harder on some things.  And I tell my older brother:  I

19  need you to hold the family down.  My little brother:  To keep

20  doing what you're doing.

21         And my two sisters:  I'm proud of you all.  I'm proud,

22  I'm so proud.  Rashona, you're pregnant, and I'm proud of you.

23  Yes, I am.  My baby's mom, but I love you to death.  You and my

24  daughter, I love you so much.

25         I sit up here squirming and a wreck, Your Honor.  I

1   just don't see how -- the case, state and nature, comes and

2   turns my life upside down; and I feel like I'm an innocent man.

3   But the jury found me guilty, so I'm a guilty man today,

4   Your Honor.  I say thank you for letting me speak.

5          THE COURT:  We'll be in recess until ten after twelve

6   by the clock on the back wall.  Be at ease.

7       (Whereupon, a recess was taken.)

8       (In open court.)

9          THE COURT:  I'm still thinking about the number of

10  months.  I will announce other conditions which will be

11  applicable, regardless of how many months I give him.

12         Upon release from imprisonment, he'll be on supervised

13  release for three years on all counts concurrently.  Within 72

14  hours of release from the custody of the Bureau of Prisons, he

15  must report in person to the Probation Office in the district

16  in which he is released.  Following supervised release, he

17  cannot -- he must not commit another federal, state or local

18  crime and must comply with the standard conditions of

19  supervision recommended by the Sentencing Commission and

20  adopted by this Court and must comply with the following

21  additional conditions.

22         He must not illegally possess a controlled substance;

23  must not possess a firearm, ammunition, destructive device, or

24  any other dangerous weapon.

25         He'll be required to participate in a program of

1    testing and, if necessary, treatment for substance abuse, the

2    program to be approved by the Probation Office until such time

3    as he is released from the program by the Court.  Further, he

4    is required to contribute to the cost of any such treatment in

5    an amount determined by the probation officer but not to exceed

6    actual cost.

7            He must submit to one drug urinalysis within fifteen

8    days after being placed on supervised release and at least two

9    periodic tests thereafter.  He can't intentionally purchase,

10   possess or use any substance designed to simulate or alter in

11   any way his own urine specimen.  In addition, he shall not

12   purchase, possess or use any device designed to be used for the

13   submission of a third party urine specimen.

14           He must participate in the United States Probation

15   Office's Work Force Development Program as directed by the

16   probation officer.

17           He must cooperate in the collection of DNA.

18           He must submit his person, property, house, residence,

19   vehicle, papers, business, or place of employment to a search

20   conducted by the US Probation -- by US Probation at a

21   reasonable time and in a reasonable manner based upon

22   reasonable suspicion of contraband or evidence of a violation

23   of a condition of supervision.  Failure to submit to any such

24   search may be grounds for revocation.  He will inform any other

25   residents that the premises may be subject to search pursuant

1    to this condition.

2             No fine for the reason stated above.

3             A special penalty assessment of $800 -- that's a

4    hundred dollars per count -- is mandatory and is due

5    immediately to the United States District Court.

6             Based on the Sentencing Reform Act of '84 and the

7    provisions found in 18 USC 3553, Mr. Howell is committed to the

8    custody of the Bureau of Prisons for 60 months on Counts 1 and

9    2, 151 months on Counts 3, 4, 8 and 9, all to be served

10   concurrently; and concurrent to Counts 1 and 2, a consecutive

11   300 months on Count 5, and a consecutive 60 months on Count 10,

12   for a total of 511 months.  Those conditions that I outlined

13   earlier are applicable.

14            Are there any objections to the form of the sentence?

15            MR. IANNI:  None from the Government, Your Honor.

16            MR. TOWNSEND:  No, Your Honor.

17            THE COURT:  All right.  Mr. Howell has the right to

18   appeal his conviction.  He has a statutory right to appeal his

19   sentence under certain circumstances, particularly if he thinks

20   his sentence is contrary to law.  With very few exceptions, a

21   notice of appeal must be filed within fourteen days of

22   judgment, when the judgment is entered in your case.  If he's

23   unable to pay the costs of appeal, he can apply for leave to

24   appeal in forma pauperis -- that is as a poor person.

25            If he asks the Clerk of the Court, the Clerk of the

1    Court will prepare and file a notice of appeal on his behalf.

2              Is there anything else we need to tend to?

3              MR. IANNI:  Nothing further from the Government,

4    Your Honor.

5              MR. TOWNSEND:  Your Honor, my client would request the

6    Clerk of Court to enter a notice of appeal on his behalf.

7              THE COURT:  All right.  The Court Clerk will be

8    directed to do so.

9              Anything else?  We are in recess.  Be at ease.

10        (Whereupon, at 12:15 p.m., court was adjourned.)

11                  C E R T I F I C A T E

12   I, Shirley Ann Hall, certify that the foregoing is a correct

13   transcript for the record of proceedings in the above-titled

14   matter.

15

16

17                            s/Shirley Ann Hall
                              Shirley Ann Hall, RDR, CRR
18                            Official Court Reporter

19

20

21

22

23

24

25