IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.:  2:17-cr-00260-AJS |
| | : | |
| v. | : | |
| | : | |
| DERON HOWELL, | : | |
| | : | HONORABLE SENIOR JUDGE |
| DEFENDANT. | : | ARTHUR J. SCHWAB |

DEFENDANT'S SENTENCING MEMO

AND NOW, comes the Defendant Deron Howell by and through his attorney Michael J.

DeRiso and DeRiso, DeRiso & Jeffries who respectfully submits this SentencingMemorandum in

advance of the sentencing hearing, currently scheduled for May 31, 2022. For the reasons that

follow, counsel contends that a variance downward to a sentence of 1 day at each of counts

1,2,3,4,8 and 9 and 60 months on each of counts 5 and 10 (yielding an aggregate sentence of 120

months 6 days imprisonment), the special assessment (at each count), no fine and five years

supervised release would constitute a sentence that would be sufficient , but not greater than

necessary, to achieve the purposes of sentencing set forth in Title 18, United States Code, Section

3553(a).  A separate Motion For Variance Downward is filed in conjunction with this Memo.

I.      INTRODUCTION.

The procedural history of this case is well known to the Court and is, therefore, not recited

at length here.  That said, Deron Howell comes before this Court for re-sentencing after issuance of

the Court's Memorandum Order on the Applicability of the First Step Act to a Vacated Sentence

on a 18 U.S.C. § 924(c) Conviction.  (ECF 373).  The Memorandum Order holds, *inter alia*, that

after surveying caselaw from the Courts of Appeals and other district courts, Section 403 of the

First Step Act[1] is applicable on vacatur because, here, after appeal in which his sentence was

---

[1] The First Step Act of 2018, Section 403(a) of the First Step Act amended § 924(c)(1)(C) to

vacated and remanded for re-sentencing Deron Howell was now before the Court with no valid

legal sentence imposed.  Particularly, your Court wrote "*The Court finds that it would be unjust*

*and punitive not to apply the Amendment as contained in the First Step Act, where Howell's entire*

*sentence has been vacated for a resentencing in this matter.*" (ECF 373, p. 13)

After this Court's Memorandum Order, a Second Addendum to the Final PSR issued.[2]  The

Addendum contained a Revised Guideline Calculation as follows:

The guideline range as to Counts 1,2,3,4,8 and 9 will not be impacted by the First Step Act, because there are no mandatory minimums associated with any of those counts of conviction. The guideline range is 121 to 151 months imprisonment for those counts based on an offense level of 31 and a criminal history category II.

As to the consecutive 924(c) counts of conviction (Cts. 5 and 10), the First Step Act takes away the stacking requirement.  Before the First Step Act was implemented, a second or subsequent count of conviction under section 924(c) triggered a higher mandatory minimum penalty, as well as mandatory "staking of the sentences for each count of conviction." As reflected in the PSR, Count 10 is a consecutive 5 years and for a second conviction at Count 5, it required a consecutive mandatory minimum of 25 years, which was to be combined with Count 10 for a total of 30 years.

The First Step Act revised section 924(c) by providing that the higher penalty for a "second or subsequent count of conviction" under 924(c) is triggered only if the defendant has a prior 924(c) conviction that has become final.  In this case, Count 10 would remain a mandatory consecutive 5 year (60 months) term of imprisonment, but Count 5 would be reduced from a 25 year mandatory minimum to a mandatory consecutive 5 year (60 months) term of imprisonment.

As a result, the imprisonment guideline range is 121 to 151 months for Counts 1,2,3,4,8 and 9, followed by a consecutive 5 years (60 months) at Count 10, and another consecutive 60 months at Count 10, for a total guideline range of 241 to 271 months.  The fine range is $30,000 to $250,000.

Defendant does not object to the Guidelines Calculation set forth at ECF 378 and has no

objections to the PSR since the filing of the Revised Guidelines Calculation contained in the

Second Addendum to the PSR.

---

mandate increased punishment only in the case of a "violation of this subsection that occurs after a prior conviction under this subsection has become final."  Congress amended the law so that contemporaneous Section 924(c) convictions no longer carry a 25-year mandatory minimum sentence.  First Step Act of 2018, § 403(a), Pub. L. No. 115-391, 132 Stat. 5194, 5221–5222 (Dec. 21, 2018).

[2] ECF 378.

II.     APPLICABLE LAW.

District courts must follow a three-step sentencing process. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). First, the district court must calculate the defendant's Sentencing Guidelines range without regard to departure motions. *Id*.; *Gall v. United States*, 552 U.S. 38, 49 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). Sentencing decisions are to be "anchored by the Guidelines," and appellate courts may presume that a Guidelines sentence is reasonable.  *Peugh v. United States*, 569 U.S. 530, 541, (2013).

When considering a non-Guidelines sentence, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. "For even though the Guidelines are advisory ratherthan mandatory, they are…the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id*. at 46 (citing *Rita v. United States*, 551 U.S. 338, 349 (2007)). Second, the court must rule on the parties' motions for upward or downward departures. *Gunter*, 462 F.3d at 237. Third, the district court must consider the factors enumerated in 18 U.S.C. § 3553(a) and exercise its discretion to craft a sentence that is appropriate under the circumstances of each particular case. *Id*. At the third step, the Court must consider the advisory Guidelines range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence.  The record must demonstrate thecourt gave meaningful consideration to the Section 3553(a) factors because "a rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006) (quoting *United States v. Cunningham, 429 F.3d 673, 679 (7th Cir. 2005)).*

Under 18 U.S.C. §3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). As a practical matter, this statutory language trumps the now-advisory policy statements in Part H of the sentencing guidelines, which list is "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth and virtually any other facts that fit within the ambit of §3553(a). See U.S.S.G. §5H1.    In sum, a sentencing court now has wide discretion in fact-finding as well as in considering such facts in the *Gall* analysis.

III.    THE TITLE 18, UNITED STATES CODE, SECTION 3553(a) FACTORS

The factors set forth in Title 18, United States Code, Section 3553(a) factors support the Defendant's recommended sentence of 120 months imprisonment in this case.

        1.   18 U.S.C. ¶ 3553(a)(1) – the nature and circumstances of the offense and the history and characteristics of the defendant.

Regarding the nature and circumstances of the offense, the Court has the benefit of the PSIR[3] and accordingly, the nature and circumstances of offense are not set forth as they are well known to the Court.  As to Offender Characteristics Mr. Howell adopts Part C of the Final Presentence Investigation Report.[4]  As is demonstrated therein, the unique complexities of the Defendant's life leading up to this offense, when viewed in light of the § 3553(a) factors, strongly favor a variance downward to a sentence of 120 months. Particularly, (1) the Defendant's difficult childhood; (2) Defendant's mental health history  of Attention Deficit

---

[3] ECF 152, ¶¶ 6-18

[4]

Hyperactive Disorder (3) the lack of serious criminal history and need for deterrence; and, (4) harsh conditions of incarceration due to the Covid pandemic.

It is arguable that the Defendant's conduct stems from his tough childhood and lack of guidance as a youth. See, *United States v. Patzer*, 548 F. Supp. 2d 612 (N.D. Ill. 2008) (downward variance of approximately 100 months granted based on the defendant's mental health diagnoses, difficult childhood, and self- medication with drugs); *Rita*, 551 U.S. at 364, (expressly noting "lack of guidance as a youth," and "medical condition (including drug or alcohol addiction)" as § 3553(a) factors not accounted for under the guidelines).

Submitted in conjunction with this Sentencing Memorandum are Letters of Support from friends and family. Those letters reveal much about Mr. Howell.

Tavia McNeil writes about Mr. Howell's growing up in low economic circumstances and the recent loss of Mr. Howell's mother. She states:

> Deron was raised by a single mother with 4 other Siblings in a low poverty neighborhood. He recently lost his mother that he cherished dearly to a heart attack & that took a toll on his life. This is no excuse to defend his actions in breaking the law and any crime committed. But I believe sometimes we let "life and trials" knock us off course.

She also writes of Mr. Howell's remorse:

> I am a Christian woman, and since Deron been incarcerated we have been writing back and forth communicating. I believe everything happens for a reason and that this prison time and isolation is a learning lesson. Deron is now a man of God with strong faith, he is completely sorry about his actions and is ready to do anything to be forgiving and presented another chance at freedom and to be a great father and raise his only daughter. He wants to use his past mistakes as a living testimony to talk & motivate other young men to live for Christ and not fall weak to the same path as he did. I strongly believe that he is a changed man, and I am always praying on his behalf.

Raymon Howell writes on behalf of the Howell family:

> ". . . As we are aware of the charges that were alleged against our loved one, and to the deepest of our compassion and concern, can attest that he has expressed his sorrow and empathetically regrets the role he participated. In these last few years Deron has been able and willing to participate in the federal guidelines in place to reform him in the quest to be a model citizen and examples the expected and acceptable behaviors to follow."

Raymon also discusses the impact Mr. Howell's imprisonment has had on the family:

> . . . "we would like to extend some of the immediate relatives who are heavily impacted
> by his current status of imprisonment. Deron has a 1Oyr old daughter Amarah Howell,
> who misses her father immensely! Amarah is only in grade school but has already started
> to feel  impact of the absence of her father, not being around for "take your father to school
> days, or being able to trick-or-treating events, or simply to have bragging right amongst
> her elementary schoolfriends  on why she has the best dad is the constant struggle for such
> a sweet little young lady who misses her dad so very much. She is asking with such
> meekness that you can show her father what forgiveness look like and show her what
> compassion looks like when her father comes home sooner than later."

 Finally, Raymon writes of the impact on Mr. Howell:

Deron has expressed some of his daily struggles with the fact that both of his parents  have
departed in death during his current time in the federal prison sentence and has yet to be able to
really embrace the grieving process. He has siblings who have tried the best to their   capacity
to aid him through phone conversations  and letter writing but this loss is just  too significant for
him to get the closure that one can achieve if able to convene with the  support from family.

Jean Gould, owner of Jean's Southern Cuisine writes:

"Deron always worked hard. He was a cook at Soul Food Connections, Jeans Southern
Cuisine and a nursing assistant at Highlands nursing home in Highland Park. To this  day
Deron also retains a job in the  penitentiary he resides at now  as a Unit worker. Deron
continually expresses  that he would like to continue this work ethic in society if          offered a
second chance at life and redeeming his character, and being the person he truly is and can be.

. . .

During Deron's stint in prison, he has had the time to rethink, reevaluate and is
ready  to come home and make remarkable contributions here in life, help others
that been in similar circumstances and give back to the  community. Hard times
do not define us but makes us better. I truly know Deron is re-found, renewed,
extremely apologetic and ready restart his life and put this stint behind him."

 At the time of the incidents forming the basis of the charges for which the Defendant

stands convicted, Defendant was 25 years old.  Defendant has conveyed to his family and others

that his conduct in the incidents of July 27th and August 7th, 2017 was lawless, reckless,

irresponsible and thoughtless.  Defendant, at the time of re-sentencing will be 25 days shy of his

30th birthday.  He has been incarcerated since September 28, 2017, at either the Allegheny

County Jail or FCI Hazelton in West Virginia, a period of 4 years and 245 days under the harsh

conditions occasioned by the pandemic and has had much time to reflect on his life.

Prior to these incidents Deron was a hard worker.  He was a cook at Soul Food Connections and Jean's Southern Cuisine as well as working as a nursing assistant at Highlands Nursing Home in Highland Park.  He volunteered, coaching and mentoring little league football.

Defendant has not wasted his time while at FCI Hazelton.  He obtained a Certificate in English, he was retained as a Unit Worker, he took parenting, drug and alcohol and anger management classes.  He was interested in participating in several other programs, however, due to the Covid pandemic many other classes were cancelled.  Mr. Howell continues to set positive goals for himself during his incarceration and is working hard to achieve those goals.

2.   18 U.S.C. ¶ 3553(a)(2)(A) – the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense.

The Second Addendum to the Final PSR calculates the imprisonment guideline range to be 121 to 151 months for Counts 1,2,3,4,8 and 9, followed by a consecutive 5 years (60 months) at Count 10, and another consecutive 60 months at Count 10, for a total guideline range of 241 to 271 months. A variance downward to a sentence of 1 day at each of counts 1,2,3,4,8 and 9 and 60 months on each of counts 5 and 10 (yielding an aggregate sentence of 120 months 6 days imprisonment), the special assessment (at each count), no fine and imposition of five years supervised release would constitute a sentence that would be sufficient , but not greater than necessary, to achieve the purposes of sentencing set forth in Title 18, United States Code, Section 3553(a).

3.   18 U.S.C. ¶ 3553(a)(2)(A) – the need for the sentence imposed to afford adequate deterrence to criminal conduct and the need for the sentence imposed to protect the public from further crimes of the Defendant.

Imposition of a sentence of 1 day at each of counts 1,2,3,4,8 and 9 and 60 months on each of counts 5 and 10 (yielding an aggregate sentence of 120 months 6 days imprisonment), the special assessment (at each count), no fine and imposition of five years supervised release would constitute a sentence that would be sufficient , but not greater than necessary, to achieve the purposes of sentencing set forth in Title 18, United States Code, Section 3553(a)  and will specifically deter

Defendant and generally deter others from committing the crimes to which Defendant pled. Imposition of such a sentence will also satisfy the statutory objectives of affording adequate deterrence to criminal conduct as well as protecting the public from further crimes by this Defendant.

4.   18 U.S.C. ¶ 3553(a)(3)(A) and (a)(4)(A) the kinds of sentences available and the sentencing range established by the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.

The kinds of sentences available and the sentencing range established by the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines are set forth at length in the Final PSR (¶¶ 73-83) and Second Addendum (ECF 378) and are therefore, not set forth at length here.  As stated in the Presentence Investigation Report, the Defendant is a Criminal History Category II based on two low level ungraded misdemeanor Driving Under the Influence convictions.  The Sentencing Commission designed criminal history categories to promote a sense of uniformity among similarly situated defendants. § 4A1.1, background. As applied to Howell, any sense of uniformity promoted by the guidelines' criminal history categories is minimal. The Defendant could have been previously convicted of murder and attained a criminal history category II. § 4A1.1 (a). Yet, the Defendant is a criminal history category II as a result of two minor, misdemeanor offenses.  The Defendant's criminal history category II overstates the seriousness of his criminal history in comparison to other similarly situated defendants.  The fact that Mr. Howell has never previously been imprisoned for a significant period of time greatly reduces the need for lengthy sentence in order to deter him from re-offending. Courts hold that, generally, a lesser prison term is sufficient to deter one who has not been subject to prior incarceration. *United States v. Baker*, 445 F.3d. 987, 992 (7th Cir. 2006).

Further, Mr. Howell's request for a total sentence of 120 months, 6 days is reasonable pursuant to *Dean v. United States*, 137 S.Ct. at 1170. Mr. Dean was convicted of conspiracy to commit robbery, two counts of robbery, one count of possessing a firearm by felon, and two counts of possessing a firearm in furtherance of a crime of violence under § 924(c). Dean, 137 S.Ct. at 1174. The District Court held that 30 years plus one day was "more than sufficient for a sentence." *Id.* However, the District Court believed it could not consider the mandatory minimum sentence of 30 years and ultimately sentenced Dean to 400 months. *Id.*  The United States Supreme Court reversed the lower court's decision.

Specifically, the Court held "nothing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." *Id*. at 1176-7.  "Whether the sentence for the predicate offense is one day or one decade, a district court does not violate the terms of § 924(c) so long as it imposes the mandatory minimum 'in addition to' the sentence for the violent or drug trafficking crime." *Id*. at 1177.

Instantly, Mr. Howell respectfully requests that the Court consider the ruling in *Dean* when imposing a sentence. Mr. Howell was convicted of 2 Counts under § 924(c). Therefore, without considering the other convictions, the Mr. Howell will automatically receive a mandatory 120 months in prison. When calculating "a just sentence for the predicate count," the Court may consider this mandatory minimum sentence, as the lower court in *Dean* originally wanted to do. *Dean*, 137 S.Ct. at 1174.  Similar to *Dean*, the Defendant here has no significant criminal history of any violence.  *Id.*  Howell's request for 120 months, 6 days is more than sufficient as a sentence (*Dean*, 137 S.Ct. at 1174) and is sufficient but not greater than necessary to fulfill the purposes of sentencing. (*Dean*, 137 S.Ct. at 1178).

6. 18 U.S.C. ¶ 3553(a)(5) & (a)(7) – any pertinent policy statement and the need to provide restitution to any victims of the offense.

There are no pertinent policy statements and there is no restitution in this case.[5]

7.  18 U.S.C. § 3553(a)(6) – the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Mr. Howell's co-defendant Octvio Marinello was sentenced to a 30 month term of probation.  Co-defendant Khalil Shelton  was ultimately sentenced to 72 months and  5 years supervised release.  After a variance downward, a sentence of 1 day at each of counts 1,2,3,4,8 and 9 and 60 months on each of counts 5 and 10 (yielding an aggregate sentence of 120 months 6 days imprisonment), the special assessment (at each count), no fine and imposition of five years supervised release would constitute a sentence that would be sufficient , but not greater than necessary, to achieve the purposes of sentencing set forth in Title 18, United States Code, Section 3553(a) for Defendant given his offense conduct and criminal history.  Such a sentence will satisfy the need to avoid unwarranted sentence disparity among similarly situated defendants.

V.     CONCLUSION.

For all of the foregoing reasons, counsel respectfully requests that the Court vary downward to a sentence of 120 months, 6 days.

---

[5] ECF 152 ¶ 88-89

VI.    SPECIAL REQUESTS.

Counsel respectfully requests that the Court:

>
> (i)  impose no fine based upon Defendant's financial condition;
> (ii) continue placement at FCI Hazelton to facilitate continued family visitation;
> (iii) recommend any vocational/educational training to assist Defendant, upon release, to integrate back into society;
> (iv) provide any medical treatment or mental health treatment that might be available to the Defendant while incarcerated.

Respectfully submitted,

/s/ Michael J. DeRiso

_____

MICHAEL J. DeRISO, ESQUIRE
Pa. Supreme Court Id. No.  076555

March 11, 2022

DERISO, DERISO & JEFFRIES, LLC
Law & Finance Building, Suite 1801
429 Fourth Avenue,
Pittsburgh, Pennsylvania 15219
Phone: 412.765.1100
Fax:    412.281.1821
Email: deriso_esq2@msn.com
*Counsel to Defendant Deron Howell*

14